REED *v.* BROWN.

1. FRAUDULENT CONVEYANCES—EXECUTION—DEBTOR AND CREDITOR—
DEEDS—PRESUMPTION FROM FAILURE TO RECORD.

Where defendant, a farmer, in 1904 executed a deed of his
farm to two sons, reserving a life interest in the parents
and providing that as part of the consideration one of
the two grantees should pay to each of five sisters, fifty
dollars on coming into possession of the property, and
where the grantees in the deeds omitted to place the same
upon record for a period of about three years, and, also,
where no evidence was introduced tending to show that
the grantor was engaged in conducting any business
which required credit, or that he owed any indebtedness,
and where in 1907 he executed a guaranty to enable one
of his daughters to open and conduct a millinery store
upon which he later became liable to the plaintiff, who
obtained a judgment against him, a court of equity would
not set aside the conveyances on the ground that they
were fraudulent as to such subsequent creditor.[1]

2. SAME—ESTOPPEL.

In the absence of any proof tending to show that the
grantees in the deeds represented that defendant owned
the property, there was no ground for holding that they
were estopped from relying on their title obtained through
the instruments.

3. SAME—DEEDS—WILLS—TESTAMENTARY CONVEYANCES.

The condition in such instrument requiring the payment
of a stated sum to each of the grantor's daughters did
not have the effect of making the instrument testa-
mentary in character. Upon delivery of the deed a vested
estate passed which would not be affected by the con-
dition requiring performance after the death of the
grantor.[2]

Appeal from Sanilac; Beach, J. Submitted Janu-

[1] On the question whether failure to record a conveyance is
a fraud upon creditors, see note in 31 L. R. A. 638.

[2] As to when a deed may be deemed testamentary in character,
see note in 1 L. R. A. (N. S.) 315.

ary 5, 1915.    (Docket No. 13.)    Decided March 17, 1915.

Bill by Charles T. Reed and others, a copartnership, against Alfred Brown and others to set aside alleged fraudulent conveyances and in aid of execution. From a decree for defendants, complainants appeal. Affirmed.

*C. F. Gates*, for appellants.

*H. O. Babcock*, for appellees.

BROOKE, C. J.   Mabelle Brown, a daughter of defendant Alfred Brown, being desirous of opening a millinery store in Detroit, had her father make the following guaranty to the firm from which she was to purchase her stock. This guaranty was received by complainants on February 15, 1907:

"MESSRS. REED BROS. & CO.,
                "Cleveland, Ohio.
*"Gentlemen:*
"For and in consideration of you extending credit to Miss Mabelle Brown, doing business at No. 506 Michigan Ave., Detroit, Mich., I hereby agree to become responsible to you for the payment of bills made by her at any time from and after this date either by herself in person or for her on order and on your usual terms. This guarantee to be good at any and all times on any bills or balances that may be due you or become due.              ALFRED BROWN."

The credit man for the complainants, in a deposition, which was received in evidence at the trial, says that he sent for mercantile reports on Alfred Brown. These reports showed that Alfred Brown owned about 80 acres of land in Elk township, Sanilac county.

The daughter failed to pay her bills, which, at the time complainants ceased to extend credit to her, amounted to $923.77. Demand was then made on Alfred Brown for this amount, and he refused to pay.

An action was then brought in the circuit court for the county of Sanilac against Alfred Brown to compel him to pay this sum. The plaintiffs in that case (complainants herein) recovered a judgment on March 18, 1910, for $1,046.16, and costs amounting to $51.72. The judgment being unpaid, an execution was levied on the real estate, title to which stood of record in Alfred Brown at the time he made the guaranty to complainants.

It appears, however, that on June 2, 1904, Alfred Brown and his wife, Elizabeth, deeded this property to their two sons, Austin and Frank—deeding each son 40 acres. The deed to Austin Brown contained the following reservation and condition:

"First parties reserve unto themselves all the use, benefits and control of said land during the life of each or either of them. It is a part of the consideration of this conveyance that second party pay to each of his five sisters or their legal heirs the sum of fifty dollars on coming into possession of said land."

In the deed to Frank Brown, Alfred Brown and his wife also reserved a life estate, and required Frank to pay off a mortgage of $300, and to take care of them during their life.

The deeds in question were drawn by one James Foster, a scrivener of Peck. His testimony tends to show that, at the time of their execution, the grantor, Alfred Brown, directed him to deliver them to the boys. The record discloses that, at the time they were made, Austin Brown was about 29 years of age, and Frank some years older, and that both boys had remained upon the farm working it for the father up to at least the fall of 1903. They both testified that they remained with their father upon his promise to compensate them for their labor by dividing the 80 acres between them. At the time the deed was made, Austin Brown had worked for his father about eight years after attaining his majority, and Frank Brown

a somewhat longer period. The record shows that in the fall of the year 1904 Frank Brown and his brother Austin went to the scrivener's office and there received and examined the deeds and handed them back to Mr. Foster; that they remained in Mr. Foster's hands until November 5, 1907, at which time Mr. Foster, at the direction of Frank, caused them to be placed on record. Austin Brown testified, and in this he is corroborated by Frank, that he instructed Frank to take charge of his deed and record it when his own was recorded.

There is no evidence in the case tending to show that, at the time the deeds were made, Alfred Brown was engaged in any business requiring credit, or that he was indebted to any one, except, perhaps, that there was a mortgage upon the farm for $300, an indebtedness which he had incurred in building a house.

It was not until three years after the making of the deeds and their delivery, as above pointed out, that he signed the guaranty which was the basis of the judgment against him. The record fails to disclose that either Alfred Brown or either of his sons made any representations as to the title of the farm, contrary to the facts.

It is beyond dispute that, at the time the deeds were made, they were made for a valuable consideration, and that they were delivered. The record discloses no adequate reason why they were withheld from record from 1904, when they were made, until November 5, 1907. This fact alone, however, in the absence of affirmative proof of a fraudulent intent on the part of the parties in interest to secure a false credit by the withholding of the papers from record, is insufficient to postpone the rights of the grantee under these deeds to those of creditors who have not acquired a lien prior to the making of the deeds.

As was said in the case of *Campbell* v. *Remaly,* 112

Mich. 214 (70 N. W. 432, 67 Am. St. Rep. 393) (a case much stronger upon its facts in favor of complainant than the case at bar) :

"It cannot, therefore, be inferred that the deed was originally withheld from record with the fraudulent. purpose of enabling the grantor to maintain a false credit. Nor are we able to find in the record any evidence which convinces us that there was any subsequent agreement or common purpose to withhold this deed from record with that intent. Indeed, the only fact from which it could be inferred consists of the continued withholding of the deed from record, and the false claims of ownership made by Frank Remaly. But these false claims are in no way brought home to the defendant Nina, and are not binding upon her."

This record is absolutely barren of any testimony tending to show that Austin Brown knew that his father intended to or did secure credit for his sister by the making of the guaranty in question. In any event, that guaranty was made three years after the deed from the father to Austin, and the deeds having been delivered, and the interest of Austin vested, the father by no act of his could impair the title conveyed by the instrument.

It is the claim of the appellants that, by reason of the condition and reservation in the deed, it is testamentary in character. This claim we think untenable. Immediately upon delivery of the instrument, a vested estate passed, and the fact that the performance of the condition was postponed until the death of the grantors could not have the effect of converting a deed absolute into a testamentary disposition.

The decree of the court below is affirmed.

McALVAY, KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.